IN THE UNITED STATES DISTRICT COURT FOR THE
WESTERN DISTRICT OF MISSOURI
CENTRAL DIVISION

| | |
|---|---|
| AMANDA WILKERSON, ) | |
| ) | |
| Plaintiff, ) | |
| ) | |
| v. ) | No. 6:13-CV-03375-NKL |
| ) | |
| CAROLYN W. COLVIN, ) | |
| Acting Commissioner of Social Security, ) | |
| ) | |
| Defendant. ) | |

**ORDER**

Plaintiff Amanda Wilkerson seeks review of the Administrative Law Judge ("ALJ")'s decision denying her applications for disability insurance and supplemental security income benefits. [Doc. # 3]. For the reasons set forth below, the decision of the ALJ is AFFIRMED.

**I.  Background[1]**

From August 26, 2008 to May 24, 2012, Wilkerson received treatment from a number of medical professionals for a variety of physical and mental impairments. Of particular relevance here, Wilkerson began receiving mental health treatment from Dr. Paul Dobard on November 7, 2011. On this initial visit, Dr. Dobard diagnosed Wilkerson with bipolar disorder and generalized anxiety disorder and assessed a Global Assessment of Functioning ("GAF") score of 55. Wilkerson saw Dr. Dobard two more times, on

---

[1] The complete facts and arguments are presented in the parties' briefs and will be duplicated here only to the extent necessary. Portions of the parties' briefs are adopted without quotation designated.

1

February 10, 2012 and April 5, 2012, at which times Dr. Dobard recorded generally unremarkable results from mental status examinations. During each of these visits, Dr. Dobard also noted improvement in Wilkerson's condition with therapy and medication.

On May 24, 2012, Dr. Dobard completed a Medical Source Statement – Mental for Wilkerson. On this form, Dr. Dobard checked boxes indicating that Wilkerson was moderately limited in nine areas of functioning and markedly limited in three. In addition, Dr. Dobard indicated that Wilkerson was extremely limited in the following eight areas of functioning: maintaining attention and concentration for extended periods; performing activities within a schedule, maintaining regular attendance, and being punctual within customary tolerances; sustaining an ordinary routine without special supervision; completing a normal workday and workweek without interruption from psychologically based symptoms and performing at a consistent pace without an unreasonable number and length of rest periods; accepting instructions and responding appropriately to criticism from supervisors; getting along with coworkers or peers without distracting them or exhibiting behavioral extremes; and setting realistic goals or making plans independently of others. Apart from the checked boxes, Dr. Dobard's opinion contains no further elaboration or explanation as to the basis for his opinion.

At the administrative hearing, Wilkerson testified that she lived alone with her seven- and eight-year-old children who she cares for, including feeding them, taking them to school, and helping them with their homework, although her parents also visit and help for about one hour each day. Wilkerson also held two part-time jobs after her alleged disability onset date, one of which she reportedly quit after her hours were

reduced. In addition, Wilkerson attended college classes after her alleged disability onset date and, during this time, Wilkerson reported that she was able to focus her attention and efforts and that she was able to handle academic and family demands. Wilkerson completed at least one semester of college during the relevant period and expressed her intent to continue her education. Wilkerson's treatment records also reflect that, after her alleged onset date, she helped prepare a garage sale and assisted with the delivery of the "Penny Power" paper, specifically rolling and stuffing papers. Finally, Wilkerson reported the ability to drive, shop for groceries, and manage her own finances.

After reviewing and discussing all of the relevant evidence, the ALJ found that Wilkerson retained the Residual Functional Capacity ("RFC") to perform sedentary work, subject to a number of individualized exceptions and restrictions. In reaching this conclusion, the ALJ found that Wilkerson was not fully credible and gave little weight to the opinion of Dr. Dobard, as well as the only other medical opinion of record, which was provided by a state agency, non-examining source.

## II. Discussion

The Court will affirm the ALJ's decision denying benefits if it applies the correct legal standards and is supported by substantial evidence in the record as a whole. *Pate-Fires v. Astrue*, 564 F.3d 935, 942 (8th Cir. 2009). "Substantial evidence means less than a preponderance, but sufficient evidence that a reasonable person would find adequate to support the decision." *Hulsey v. Astrue*, 622 F.3d 917, 922 (8th Cir. 2010). The Court must consider the evidence that supports the ALJ's decision as well as the evidence that detracts from it. *Pate-Fires*, 564 F.3d at 942. An administrative decision will not be

3

reversed, however, simply because substantial evidence would have supported a contrary decision. *Reed v. Barnhart*, 399 F.3d 917, 920 (8th Cir. 2005). If, after reviewing the evidence, it is possible to reach two inconsistent positions and one of those positions represents the ALJ's findings, the Court must affirm the decision. *Buckner v. Astrue*, 646 F.3d 549, 556 (8th Cir. 2011).

Wilkerson argues that the ALJ erred by giving little weight to the opinion of Dr. Dobard. A treating physician's opinion is entitled to controlling weight if it is well-supported by medically acceptable diagnostic techniques and not inconsistent with the other substantial evidence in the record. SSR 96-2p, 1996 WL 374188 (July 2, 1996); *Myers v. Colvin*, 721 F.3d 521, 525 (8th Cir. 2013). Nonetheless, an ALJ may discount or disregard a treating physician's opinion where it is inconsistent with other substantial evidence in the record, such as additional medical evidence or the claimant's testimony. *Myers*, 721 F.3d at 525; *Goff v. Barnhart*, 421 F.3d 785, 790-91 (8th Cir. 2005); *see also Medhaug v. Astrue*, 578 F.3d 805, 815 (8th Cir. 2009); *Hacker v. Barnhart*, 459 F.3d 934, 937 (8th Cir. 2006).

In this case, the ALJ gave good reasons for discounting the opinion of Dr. Dobard and substantial evidence supports this decision. As the ALJ found, the marked and extreme limitations noted by Dr. Dobard were not consistent with Dr. Dobard's treatment notes, specifically the results of Wilkerson's mental status examinations during her visits with Dr. Dobard. *See, e.g.*, [Tr. 21-22, 480, 483, 535]. Wilkerson argues that the ALJ erred by citing the GAF score of 55, which indicates only moderate symptoms, assessed by Dr. Dobard on Wilkerson's initial visit, as this only reflected Dr. Dobard's assessment

4

of Wilkerson's functioning on that particular day. However, Dr. Dobard's subsequent treatment notes do not contain GAF scores and the mental status examinations and other findings contained in Dr. Dobard's later treatment notes reflect, if anything, even less disabling symptomology than on the initial visit. *See* [Doc. # 480, 535]. Accordingly, the ALJ did not err in finding that this GAF score conflicted with Dr. Dobard's later opinion on the extreme limiting effects of Wilkerson's mental impairments.

Furthermore, Dr. Dobard's treatment notes support the ALJ's conclusion that Wilkerson generally responded well to and improved with her relatively conservative treatment. *See, e.g.*, [Tr. 21, 423, 446, 535]. "If an impairment can be controlled by treatment or medication, it cannot be considered disabling." *Brace v. Astrue*, 578 F.3d 882, 885 (8th Cir. 2009) (quotation omitted). In addition, as found by the ALJ, Dr. Dobard's opinion was inconsistent with the treatment notes of Wilkerson's other treating sources. *See, e.g.*, [Tr. 21-22, 423, 446, 459-60, 525]. Considering that Dr. Dobard's opinion consisted of nothing more than a checklist form, the ALJ did not err in discounting this conclusory opinion as inconsistent with the objective medical evidence of record. *See Strongson v. Barnhart*, 361 F.3d 1066, 1070 (8th Cir. 2004) ("It is appropriate, [] to disregard statements of opinion by a treating physician that consist[s] of nothing more than vague, conclusory statements." (quotation omitted)).

The ALJ also correctly found that Wilkerson's daily activities, which included working and attending college classes after her alleged disability onset date, were inconsistent with the existence of disabling impairments. [Tr. 16-17, 22]. This provides further support for the ALJ's decision to discount Dr. Dobard's opinion. *E.g.*, *Myers*, 721

5

F.3d at 525 (8th Cir. 2013) ("[W]e have upheld an ALJ's decision to discount a treating physician's opinions . . . where the physician's opinion was inconsistent with the claimant's own testimony."). Furthermore, the ALJ appropriately noted that Wilkerson's treatment records contained evidence of symptom exaggeration for the purpose of obtaining disability benefits. *See* [Tr. 21, 488]]. Considering that Dr. Dobard's assessment appears to be based primarily on Wilkerson's subjective claims, the evidence of symptom exaggeration further supports the ALJ's decision to afford little weight to Dr. Dobard's opinion. *See Craig v. Apfel*, 212 F.3d 433, 436 (8th Cir. 2000) ("[T]he ALJ acted properly in disregarding those portions of Dr. Cobb's report that were based on Craig's subjective descriptions to him of her pain levels.").

Wilkerson alternatively argues that because the ALJ gave little weight to both of the medical opinions in the record, there is no medical evidence that supports the ALJ's decision. However, the ALJ's RFC determination does not have to be based upon, or correlate directly with, any particular medical opinion of record. See *Martise v. Astrue*, 641 F.3d 909, 927 (8th Cir. 2011) ("[T]he ALJ is not required to rely entirely on a particular physician's opinion or choose between the opinions [of] any of the claimant's physicians." (quotation omitted)). Rather, RFC is to be determined "based on all relevant evidence including the medical records, observations of treating physicians and others, and an individual's own description of his limitations." *Moore v. Astrue*, 572 F.3d 520, 523 (8th Cir. 2009) (quotation and citation omitted).

In this case, the ALJ conducted a thorough review of all of the relevant evidence, including the objective medical evidence, Wilkerson's reports about her activities, and

6

the medical opinions of record. *See* [Tr. 16-22]. The absence of a medical opinion that correlates directly with the ALJ's RFC determination does not mean that the ALJ's decision is not based on any medical evidence. To the contrary, the ALJ's RFC determination is well-supported by the relevant treatment records. Consequently, although Wilkerson cites to some evidence that might support a contrary decision, substantial evidence supports the ALJ's RFC determination and, as such, the Court is required to affirm. For the same reason, reversal is not warranted by the ALJ's failure to address every piece of evidence in assessing Wilkerson's credibility. The ALJ's credibility determination is supported by substantial evidence, notwithstanding the additional items cited by Wilkerson that might support a contrary result.

Finally, the ALJ's detailed discussion of the relevant evidence adequately sets forth the basis for the ALJ's RFC determination. *See Browning v. Sullivan*, 958 F.2d 817, 822 (8th Cir. 1992) ("To require a more elaborate articulation of the ALJ's thought processes would not be reasonable."). Accordingly, Wilkerson's claim that the ALJ's decision must be reversed for failing to provide a narrative explanation of the RFC determination is without merit.

## III. Conclusion

For the reasons set forth above, the decision of the ALJ is AFFIRMED.

s/ NANETTE K. LAUGHREY
NANETTE K. LAUGHREY
United States District Judge

Dated: July 9, 2014
Jefferson City, Missouri